## Ex Parte Ross Zinnanti.

No. 17279.    Delivered October 17, 1934.
Rehearing Denied November 7, 1934.
Reported in 75 S. W. (2d) 452.

The opinion states the case.

*Kahn & Branch,* of Houston, for appellant.

*Percy Foreman,* Asst. Crim. Dist. Atty., of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Relator is charged by indictment with the offense of murder. The appeal is from an order denying bail.

The testimony hereinafter set forth was given by witnesses for the State.

Joe DeGeorge and his wife, Loretta DeGeorge, lived in the city of Houston and also had a house on the bay near Houston where they resided at times. Relator lived on the Post Oak Road in Houston, but spent part of his time on the bay, occupying part of the pier belonging to DeGeorge. At this juncture we quote the words of DeGeorge: "He (relator) stayed down there by force; it is my pier. I mean by 'force' I just couldn't get rid of him." Relator and DeGeorge had been friends until about eighteen months prior to the homicide. In the course of his testimony, DeGeorge said: "Sure, she (Mrs. DeGeorge) ceased her friendship for Ross a year and a half ago." However, another State's witness testified that relator and Mrs. DeGeorge were on friendly terms shortly prior to the homicide. DeGeorge remained on speaking terms with relator.

On the 18th of September, 1934, relator came to DeGeorge's house about dark and told him, in effect, that he (relator) was charged in the Federal court with the offense of possessing whisky. He requested DeGeorge to appear on the following day and testify that he (relator) had not been in the city of Houston, but had been on the bay continuously from the time school closed until after the liquor was discovered in his home.

DeGeorge demurred, saying that he could not say where relator was during the time he (DeGeorge) was in the city of Houston employed in a bank. Relator had his gun with him and "had fire in his eyes." DeGeorge told relator that as far as the whisky was concerned he could not testify, as he did not know to whom it belonged. However, he finally agreed to appear and testify as to what he knew about the whereabouts of relator at the bay during the time in question. At this juncture relator said to DeGeorge: "Whoever, man or woman, has turned me into the authorities, I am going to kill them." DeGeorge asked: "Who are you referring to, me or my wife?" Relator replied: "I do not know; I believe you did it." Several weeks prior to the homicide relator stated to Mrs. Loretta DeGeorge, while she and relator were together on the pier at the bay, that he would kill her the next time he was alone with her.

On the 20th of September, 1934, DeGeorge left his home in Houston and with his wife carried their children to school. From the school he went to his work, leaving his wife on a street corner. At 5 o'clock p. m. of the same day he learned that his wife was dead. At 1:30 p. m., a witness living 5 miles from Addicks observed a 1933 model Chevrolet sedan with yellow wheels and a trunk on the back parked in the vicinity of his home. He started toward the car for the purpose of making an investigation, and when within 75 yards of it heard two shots fired in rapid succession—about two seconds apart. He then heard a voice, which he took to be a woman's voice, holler "Oh" faintly. In about a minute after the shots were fired he saw relator coming from the direction of the shots, with a pistol in his hand. Relator opened the car door with his left hand and tossed the gun inside the front part of the car. He got in the car and sped toward the witness, coming within 35 yards of him. He then changed his course to the right and drove away. Witness immediately ran to the point where he had heard the shots. Upon reaching the creek bank he saw Mrs. Loretta DeGeorge (deceased) lying on the ground. She said: "Help me," twice. He asked who shot her, and she made no reply. Deceased died in a few minutes. There was no other man at the place of the homicide. The witness said there was no other man around that locality when the shots were fired, but qualified his statement on cross-examination to the effect that if anybody else was down there he did not see them. He did not see the shots fired. Deceased was unarmed, having no weapons of

any character. The witness immediately reported the matter to the officers.

A special state ranger received a radio call to the effect that a man in a Chevrolet sedan had shot a woman near Addicks on Buffalo Bayou and to be on the lookout for him. When within about two blocks of the River Oaks entrance in Houston, the officer observed a Chevrolet sedan of the description given over the radio coming toward him. He gave chase. On stopping relator,—the time being about 2:15 p. m. on the date of the homicide,—the officer asked him where he had his gun. Relator replied: "It is here," and started to reach for it. The officer said: "No, hold up your hand." Relator said: "What do you mean?" The officer replied: "The gun you shot that woman with." Relator said: "I don't have no gun; I didn't shoot no woman." The officer then said: "You answer the description of the man that did shoot a woman," and relator replied: "Well, I got a gun." Taking possession of the pistol, the officer examined it. He found that he could smell smoke, his testimony being that the pistol looked like it had just been shot. There was one empty cartridge in the gun.

An examination of deceased's body disclosed that one shot had entered the left side. There was a powder burn where the bullet entered. There was also a wound on the neck, ranging down.

Relator did not testify and introduced no witnesses.

If the evidence, whether direct or circumstantial, is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered, bail is not a matter of right. Ex parte Coldiron et al, 15 Texas App., 464; Ex parte Powell, 298 S. W., 575, and authorities cited. On appeal from an order denying bail, the decision of the trial court upon the facts, while not conclusive, is accorded great weight. Ex parte Hanks, 97 Texas Crim. Rep., 387. The mere fact that there is in evidence mitigating facts coming from the testimony of the accused will not in every case suffice to overturn the decision of the trial judge. Ex parte Hanks, supra, and authorities cited. Applying the rules mentioned to the evidence before us, we have reached the conclusion that this court would not be warranted in reversing the judgment of the trial court denying bail. See Ex parte Rothschild, 2 Texas App., 560.

The judgment denying bail is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—As requested by appellant we have again reviewed the facts. We are not impressed that under the evidence we fell into error in affirming the judgment denying bail.

The motion is overruled.

*Overruled.*